UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FULL MOON LOGISTICS,
a Florida Limited Liability Company;
and JADESH JAIGOBIND, an
individual,

      Plaintiffs,

v.                                                  Case No: 8:21-cv-2695-WFJ-AAS

BALD EAGLE LOGISTICS, INC.,
a New Jersey Corporation; and
MALIAN NUS, an individual,

      Defendants.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION IN PART

This matter is before the Court on Defendants Bald Eagle Logistics, Inc. and Malian Nus' motion to compel arbitration and stay the action or, alternatively, dismiss the case, (Dkt. 24), Plaintiffs Full Moon Logistics, LLC and Jadesh Jaigobind's response, (Dkt. 28), and Defendants' reply in further support of their motion, (Dkt. 31). After careful consideration of the parties' submissions, the Court grants the Defendants' motion to compel arbitration.

## BACKGROUND

Full Moon Logistics, LLC ("Full Moon") and Bald Eagle Logistics, Inc. ("Bald Eagle") entered into an agreement on or about August 18, 2021. (Dkt. 1-2).

This "Dispatcher-Carrier Agreement" ("Agreement") was drafted by the Defendant Bald Eagle, (Dkt. 24 at 9), with the alleged help of the Plaintiff Full Moon, (Dkt. 28 at 11).[1] The Agreement provided that Full Moon would supply dispatching services to Bald Eagle in exchange for monetary compensation. (Dkt. 1-2). The Agreement was perpetual but allowed termination by either party after giving 30 days' written notice to the other party. (Dkt. 1-2). The Agreement restricted Bald Eagle from soliciting or doing transportation or warehousing business with any customers it serviced through the Agreement until two years after the Agreement's termination, unless both parties agreed otherwise in writing. (Dkt. 1-2 at 2). If this were breached, Full Moon would be entitled to "twenty five (25) percent of the aggregate of all rates and charges assessed by carrier [Bald Eagle] for transportation services provided to any account of dispatcher [Full Moon] that is handled in contravention of this agreement," as well as $10,000 of liquidated damages. (Dkt. 1-2 at 3). The Agreement also provided the following arbitration provision in Paragraph 10 of the Agreement: "Where a dispute or disagreement arises, both parties agree to tender the issue to binding arbitration in the 'State of Florida.'" (Dkt. 1-2 at 3). This provision is the reason for the current dispute.

---

[1] Defendants contend that they had no part in drafting the Agreement. (Dkt. 31 at 7). In fact, Defendants point out that the Agreement was copied from the first result of a basic Google search for "dispatcher carrier agreement" and barely modified by the Plaintiffs. (Dkt. 31 at 7–8).

2

On October 22, 2021, Bald Eagle allegedly terminated the Agreement without providing adequate notice to Full Moon. (Dkt. 1 at 2; Dkt. 24 at 9). Full Moon notified Bald Eagle of its breach via email the same day, and on October 27, 2021, Full Moon sent formal notice to Bald Eagle via letter that Bald Eagle was in breach of contract. (Dkt. 1 at 2; Dkt. 24 at 9–10). Plaintiff Full Moon (and owner, Jadesh Jaigobind) filed a complaint against Bald Eagle (and owner, Malian Nus) on November 17, 2021, alleging misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, Misappropriation of Trade Secrets under the Defend Trade Secrets Act, breach of contract, and unjust enrichment. (Dkt. 1). Bald Eagle filed a motion to compel arbitration pursuant to the arbitration provision in the Agreement or, in the alternative, dismiss Plaintiffs' complaint on January 3, 2022. (Dkt. 24). Plaintiffs subsequently replied with a response in opposition to Bald Eagle's motion to compel arbitration on January 18, 2022, arguing that arbitration is not required because the Agreement was not valid under an unconscionability defense. (Dkt. 28). Defendants replied on January 31, 2022 rebutting the unconscionability defense and arguing that arbitration is thereby required (if the case is not dismissed), and that neither Jaigobind nor Nus are parties to the lawsuit, particularly to the breach of contract claim. (Dkt. 31).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") holds that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This reflects the strong federal policy toward resolving disputed arbitrable issues through arbitration; in fact, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration" (citing *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25)).

## ANALYSIS

When deciding whether the parties have agreed to arbitrate certain matters, courts generally apply state law principles governing the formation of contracts. *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (stating that courts may decide "certain gateway matters, such as whether parties have a valid arbitration

agreement at all or whether a[n] . . . arbitration clause applies to a certain type of controversy"). Florida law applies here because the arbitration provision indicates that both parties intended to subject themselves to binding arbitration in Florida,[2] and the Agreement itself contains no contrary choice-of-law clause. *See Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1061 n.1 (11th Cir. 1998); *Tranchant v. Ritz Carlton Hotel Co., LLC*, No. 2:10-cv-233-Ftm-29DNF, 2011 WL 1230734, at *3 (M.D. Fla. Mar. 31, 2011).

The Court considers the following factors when deciding whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted).

### *Validity of the Contract*

Under Florida law, a valid contract requires an "offer, acceptance, consideration," *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004), and mutual assent to the terms of the agreement, *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989).

---

[2] (Dkt. 1-2 at 3) ("Where a dispute or disagreement arises, both parties agree to tender the issue to binding arbitration in the '*State of Florida*.'") (emphasis added).

5

The evidence shows that a valid contract exists. The Dispatcher-Carrier Agreement signed by both parties constitutes an offer and acceptance. (Dkt. 1-2). Furthermore, consideration is present, shown by the language of the contract,[3] as well as the obligations of both parties. (Dkt. 1-2 at 1–3). Finally, mutual assent is met as the parties agreed to the obligations required of each party. (Dkt. 1-2 at 1). Therefore, the Dispatcher-Carrier Agreement is a valid contract.

*Unconscionability*

The Court is not persuaded by Plaintiffs' attempts to show an invalid contract based on the theory of procedural and substantive unconscionability, which, if successful, could destroy the arbitration provision. *Dunn v. Global Trust Mgmt., LLC*, 506 F. Supp. 3d 1214, 1233 (M.D. Fla. 2020) (citing *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). If the formation of a contract is an issue, then a court must hold a trial to resolve factual questions over whether an agreement was formed. *Garcia v. Harmony Healthcare, LLC*, No. 8:20-cv-1065-WFJ-AAS, 2021 WL 1610093, at *3 (M.D. Fla. Apr. 26, 2021) (citing 9 U.S.C. § 4). However, "a district court may conclude as a matter of law that parties [executed] an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore v.*

---

[3] The language of the Agreement states "NOW, THEREFORE, in *consideration* of the promises and convents hereinafter contained it is mutually agreed by and between parties hereto as follows," and then lists the obligations of both parties. (Dkt. 1-2) (emphasis added).

6

*Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). A dispute will not be "genuine" if it is not supported by evidence or if it is supported by evidence that is not probative or colorable. *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014). When looking at whether the unconscionability defense is genuine, the party claiming unconscionability has the burden to prove that the agreement or a provision is both procedurally and substantively unconscionable. *Dunn*, 506 F. Supp. 3d at 1233 (citing *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014)).

*Procedural Unconscionability*—First, the contract is not procedurally unconscionable. Under Florida law, courts consider four factors to determine whether a contract is procedurally unconscionable:

> 1) the manner in which the contract was entered into; 2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; 3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and 4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*McAdoo v. New Line Transp., LLC*, No. 8:16-cv-1917-T-27AEP, 2017 WL 942114, at *2 (M.D. Fla. Mar. 9, 2017) (citing *Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *5 (M.D. Fla. July 20, 2011)).

No facts in the instant case lead the Court to believe that the Dispatcher-Carrier Agreement was procedurally unconscionable to the detriment of Plaintiffs. Plaintiffs state that both they and Defendants negotiated the Agreement, making

7

this far from a "take-it-or-leave-it" situation where the parties have no meaningful choice. (Dkt. 28 at 5). In fact, Defendants claim that Plaintiffs were the ones in control of the drafting process and that they had no input in the drafting process at all. (Dkt. 31 at 7–8).

Finally, the fact that the arbitration provision was allegedly "hidden among the text and fine print" does not sway the Court in finding procedural unconscionability. (Dkt. 28 at 11). While the arbitration provision was not clearly labeled and not in a prominent place, it is hard to imagine how "hidden" this provision was in a contract that is not even four full pages. (Dkt. 1-2). Even still, this Agreement was a standard form agreement found through a basic Google search for "dispatcher carrier agreement," and Plaintiffs must have acknowledged the arbitration provision as they added "Florida" to the arbitration provision, replacing the standard "Your State" language in the form. (Dkt. 31 at 7).

*Substantive Unconscionability*—While the contract is not unconscionable (due to the finding of no procedural unconscionability) and the analysis may stop here, the Court would also find the Agreement not substantively unconscionable either. Substantive unconscionability is found if the terms of the contract are "so outrageously unfair as to shock the judicial conscience." *McAdoo*, 2017 WL 942114, at *3 (internal quotation marks omitted) (citing *Premier Real Estate Holdings, LLC v. Butch*, 24 So. 3d 708, 711 (Fla. 4th DCA 2009)). Under Florida

8

law, substantive unconscionability must show an agreement where "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 8:13-cv-879-T-24 MAP, 2013 WL 6182321, at *3 (M.D. Fla. Nov. 25, 2013) (internal quotation marks omitted) (citing *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1139 (11th Cir. 2010)).

The Court does not find that the terms of the Agreement are outrageously unfair. The Agreement is a standard form that can be found through a Google search, (Dkt. 31 at 7–8), and the Agreement was subsequently modified by Plaintiffs, (Dkt. 31 at 7). Plaintiffs had the opportunity to further modify the terms they claim are so outrageously unfair, but chose not to do so. Therefore, the Agreement is not substantive unconscionabile, and the Agreement is valid.

### *Arbitrability of the Issues*

The issue here is whether Plaintiffs' Florida claims for misappropriation of trade secrets, breach of contract, and unjust enrichment, as well as Plaintiffs' federal claim for misappropriation of trade secrets, are arbitrable issues within the scope of the Agreement's arbitration provision. Paragraph 10 of the parties' Dispatcher-Carrier Agreement states "[w]here a dispute or disagreement arises, both parties agree to tender the issue to binding arbitration . . . ." (Dkt. 1-2 at 3).

Plaintiffs' claims fall within the scope of the arbitration provision. The plain language of the arbitration provision does not provide any limiting language as to what kind of disputes must be submitted to arbitration—the provision simply requires arbitration "[w]here a dispute or disagreement arises." (Dkt. 1-2 at 3); *see Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218–19 (11th Cir. 2011) (finding that the inclusion of terms such as "related to," "arising out of," and "connected with" limited the scope of the parties' arbitration clause that is otherwise interpreted very broadly). If the parties desired a narrower scope on what must be arbitrated, the parties should have included sufficient language to indicate the narrower scope, such as listing the types of claims that must be arbitrated under the Agreement. *See Milestone*, 2019 WL 5887179, at *2 (finding the absence of language including what claims are within the scope of arbitration "does not indicate an intent to limit the scope of the arbitration provision"). Therefore, because a "dispute or disagreement" has arisen, and there is no limiting language in the provision, this dispute has been agreed to be submitted to arbitration.

Reading this broad, overarching arbitration provision in context of the remainder of Paragraph 10 of the Agreement, one could potentially interpret that the provision only applies to the language preceding the arbitration provision:

> If carrier should perform services of a transportation or warehousing nature for compensation for any dispatcher customers without prior documented authorization from dispatcher during the applicable time period in violation of this agreement, carrier shall pay to dispatcher

10

> within ten (10) days of each such violation an amount equal to (25%) of all revenues invoiced by carrier to the solicited customer.

(Dkt. 1-2 at 3). Even if this were the case, Plaintiffs' claims would still be within the relevant scope of Paragraph 10. Plaintiffs' claims in Counts I and II relate to misappropriation of trade secrets by Defendants, who allegedly misappropriated Plaintiffs' trade secrets by procuring dispatch business from their confidential client lists without Plaintiffs' authorization. (Dkt. 1 at 3–8). Furthermore, Plaintiffs' claims in Counts III and IV arise from Defendants allegedly breaching the contract itself by utilizing Plaintiffs' client lists and the unjust enrichment flowing to Defendants through the use of the client lists to procure business. (Dkt. 1 at 8–12). Therefore, Plaintiffs would have no reason to file suit without the existence and dependence upon the Dispatcher-Carrier Agreement—Plaintiffs' rights against Defendants exist because of this Agreement and their status with Defendants in this relationship. *See Milestone*, 2019 WL 5887179, at *2.

Because Plaintiffs' right to have their client lists confidential and not misused by Defendants is dependent on the Dispatcher-Carrier Agreement, Plaintiffs' current claims fall within the scope of the arbitration provision in the Agreement. *See McAdoo*, 2017 WL 942114, at *4 (finding that plaintiffs' federal employment discrimination claims were "dependent upon plaintiffs' employment status and could not be brought in the absence of the employment relationship governed by the owner operator agreements").

### *Waiver of Right to Arbitrate*

The final issue is whether Defendants have waived their arbitration rights. Defendants have not. To establish waiver of arbitration rights, Plaintiffs must show that Defendants 1) "acted inconsistently with proceeding to arbitration," and 2) "if so, whether the party who acted inconsistently prejudiced the other party." *Milestone*, 2019 WL 5887179, at *3 n.3 (citations omitted). In considering this test and the federal policy favoring arbitration, the party arguing waiver bears the burden of proof. *Grant v. JP Morgan Chase & Co.*, No. 8:19-cv-1808-T-02SPF, 2019 WL 5215711, at *3 (M.D. Fla. Oct. 16, 2019) (citing *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011)).

Defendants have not acted inconsistently with their right to arbitration. A successful showing that one has acted inconsistently requires a demonstration that the party arguing for arbitration has invoked "the litigation machine prior to demanding arbitration." *Id.* (internal quotation marks omitted) (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). In *Grant*, while the defendant prepared a motion to dismiss after reading the complaint, this was not a response in furtherance of litigation, leading the court to find no waiver. *Id.* Similarly, Defendants have not filed a response in furtherance of litigation, but rather a motion to compel arbitration and stay the action (or, alternatively, to dismiss the complaint). This is acting consistently with the right to

arbitration, and the analysis may stop here as Plaintiffs have failed to meet the first factor of waiver, thereby necessitating a finding of no waiver.

### *Jaigobind and Nus' Right to be Included in the Action*

In the original complaint, Plaintiffs were listed as both Full Moon Logistics, LLC and Jadesh Jaigobind (owner of Full Moon), and Defendants were listed as both Bald Eagle Logistics, Inc. and Malian Nus (owner of Bald Eagle). (Dkt. 1). There is dispute as to whether the individuals in this action are parties, particularly regarding Counts III and IV resulting from the breach of contract.

Upon the Court's careful consideration, the individuals are not parties to Counts III and IV, regarding breach of contract and unjust enrichment, respectively. "As a general rule, nonparties to a contract . . . can neither sue nor be sued for breach of a contract to which they were not parties." *Echevarria v. Navient Solutions, LLC*, No. 6:20-cv-1406-Orl-40DCI, 2020 WL 9600112, at *2 (M.D. Fla. Oct. 14, 2020) (quoting *Morgan Stanley DW, Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004)).The first line of the Agreement states the following: "This Agreement is made on August 18, 2021, *by and between* 'Full Moon Logistics, LLC', hereafter referred to as 'dispatcher', *and Bald Eagle Logistics, Inc.* referred to as 'carrier'. (Dkt. 1-2 at 1) (emphasis added). While both Jaigobind and Nus signed the final page of the Agreement, the intention to bind only the entities was clearly indicated by both their respective entity titles

13

appearing above their signatures and the opening language of the Agreement explained previously. (Dkt. 1-2 at 1, 4).  There is no indication that either Jaigobind or Nus intended to enter into contract here—only the entities were intentionally binding themselves to the Agreement. Therefore, since Messrs. Jaigobind and Nus are both not signatories, they are not parties to the arbitration clause.

## CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that Defendants' Motion to Compel Arbitration and stay the case (Dkt. 24) is granted, and Jaigobind and Nus are not parties to Counts III and IV of the complaint. The corporate parties are directed to arbitrate the claims as they agreed in the August 2021 Agreement. The case is stayed and the matters involving the individual Defendants will be stayed pending the underlying arbitration. The Clerk is directed to administratively close the case, pending arbitration. The parties shall notify the Court upon conclusion of arbitration by a motion.

**DONE AND ORDERED** at Tampa, Florida on February 16, 2022.

>*/s/ William F. Jung*
>**WILLIAM F. JUNG**
>**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record